UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES LITTON MORRIS,

     Petitioner,

v.                               Case No.  3:16cv40/LC/CJK

JULIE L. JONES,

     Respondent.

_____/

<u>ORDER</u> and
<u>REPORT AND RECOMMENDATION</u>

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C.

§ 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the

state court record.  (Doc. 31).  Petitioner replied.  (Doc. 34).  The matter is referred

to the undersigned magistrate judge for report and recommendation pursuant to 28

U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).   After careful consideration, the

undersigned concludes that no evidentiary hearing is required for the disposition of

this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United

States District Courts.  The undersigned further concludes that the pleadings and

attachments before the court show that petitioner is not entitled to habeas relief, and

that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On July 10, 2012, petitioner was charged by information filed in Escambia County Circuit Court Case No. 12-CF-3094, with one count of lewd or lascivious molestation of a 15-year old girl in violation of Fla. Stat. 800.04(5)(a) and (c)2. (Doc. 31, Ex. B, p. 1).[1] Petitioner faced a maximum possible sentence of 15 years in prison. Fla. Stat. § 775.082(3)(d). The charge arose from these facts, as recited in the arrest report.

On June 23, 2012, the victim, M.T., was at a McDonald's with her high school basketball team. M.T. was wearing a team uniform with the words "Can we?" on one side of the shirt, referring to winning a championship. As M.T. was walking to the door to exit the restaurant, petitioner grabbed her and asked, "Can we? Can we? Can we?", while simultaneously grabbing and squeezing M.T.'s shirt near her breasts and grabbing her buttocks. M.T. immediately pulled away. A patron entering the restaurant, Kyle Morris (unrelated to petitioner), witnessed the incident. Witness Morris was holding the door open for his two sons when he saw petitioner grab M.T.'s breast and buttocks. Witness Morris also saw M.T. pull away. As M.T. passed by Kyle Morris, she asked if he saw what happened. Witness Morris

---

[1]All references to exhibits are to those provided at Doc. 31. When a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom center.

confirmed he did and advised M.T. to notify her coach.  M.T.'s coach, Stevie Sparks,

called the police.  Upon questioning by police, petitioner admitted saying "Can we?"

to M.T., but denied touching her.  (Ex. B, p. 3).  Defense counsel deposed M.T.,

Escambia County Sheriff's Deputy Justin Moore, Caroline Pate (Director of

Operations for McDonald's), Kyle Morris and Stevie Sparks.  (Ex. C (notices of

depositions); Ex. L, pp. 141-96 (deposition transcripts)).

On March 28, 2013, petitioner signed a counseled, negotiated plea agreement

(titled "Sentence Recommendation"), under which he pled no contest to the lewd or

lascivious molestation charge with an adjudication of guilt and designation as a

sexual offender, in exchange for the State recommending a sentence of 48 months'

imprisonment followed by 60 months' sex offender probation with various

conditions.  (Ex. B, pp. 6-9).  Petitioner acknowledged, by signing the plea

agreement, that he fully understood the charge; that he fully understood the rights he

was waiving by entering the plea; that sufficient facts existed to support the plea as

set forth in the arrest report incorporated by reference into the plea agreement; and

that he did not contest the charge.  (*Id.*).  Petitioner further affirmed that his attorney

discussed with him the facts of his case; that he was satisfied with his attorney's

advice and services; and that his attorney did not compel or induce him to enter the

plea.  (*Id.*).  The court conducted a plea colloquy during which petitioner stated under

oath that he understood the rights he was waiving by entering the plea; that he understood the terms of the plea; and that he was entering the plea freely and voluntarily. (Ex. B, pp. 40-44). When the trial court inquired whether petitioner was satisfied with his attorney's services, this exchange took place:

> THE COURT: Let the record reflect that he does appear competent to the Court. Are you satisfied with the services of your attorney?
>
> THE DEFENDANT: I –
>
> THE COURT: Well, and if you're not, this [is] the time to discuss it.
>
> THE DEFENDANT: Well, yeah –
>
> MS. COBB [Defense Counsel]: You're not going to offend me in the slightest bit.
>
> THE DEFENDANT: I mean, I asked for information concerning the case that I've received on other cases before, like copies of disposition and depositions – I mean, copies of discovery and depositions. I got nothing that I could go over it myself in my own time. In a prior case, I was given all of that. And I don't know, maybe it's budget constraints. It's probably not her fault. I'm not satisfied with that part of it.
>
> THE COURT: Okay. And I will clearly hear from Ms. Cobb. I do know that that issue has gone back and forth in the Public Defender's Office because Tallahassee has crunched down on the funding a lot. There was a point in time where I know that people were given copies of things. Then it was my understanding at least for the last several years that they haven't given you copies of things, but they obviously are required to sit down with you and go over that.

I'll hear from Ms. Cobb.  Ms. Cobb.

MS. COBB:  Judge, that is the policy in our office, that we are not required to give copies and we normally don't.  But I have gone over every deposition with him and gone over all the discovery.

THE COURT:  Okay.  I will tell you then, Mr. Morris, I don't know of any authority that I have to make them give copies to folks. The gist is if I were in your shoes, I would want it in my hot little hands. I'd want to be able to read it at my leisure and make sure I understood everything, but I don't know of any authority that I have to make them do that as long as they have gone over it with you.

Now, do you feel like that she had gone over the stuff with you and you just wanted to be able to digest it?

THE DEFENDANT:  She went over the depositions with me.  I have no idea what is in the discovery though.

THE COURT:  Okay.

THE DEFENDANT:  And I would have liked to have been able to sit down and go over within my own time and not be rushed and not rushing her either, you know.

THE COURT:  I understand.  Well, based upon that, I'm not going to find that she has done anything inappropriate.  So unless you tell me that you don't want to enter this plea, I'm going to go ahead and sentence you.

THE DEFENDANT:  No, ma'am, I'm just ready to get this over with.

THE COURT:  Understood.

THE DEFENDANT:  That county jail is about to drive me crazy.

(Ex. B, pp. 44-46).  After additional questioning, the court concluded the colloquy:

"And with all of this being said, is it your intent today to enter a plea of guilty to

these charges because you are indeed guilty or no contest because it would be within

your best interest to do so?"  (Ex. B, p. 47).  Petitioner responded, "No contest."

(*Id*.).  The trial court found a factual basis for the plea, accepted petitioner's plea,

adjudicated him guilty, designated him a sexual offender, and sentenced him

consistent with the plea agreement.  (Ex. B, pp. 6-9 (plea agreement), pp. 40-51 (plea

colloquy), pp. 15-21 (judgment and sentence); pp. 23-28 (order of sex offender

probation)).  Judgment was rendered March 28, 2013.  (Ex. B, pp. 15-21).  Petitioner

did not immediately appeal.

On June 3, 2013, petitioner filed a petition for belated appeal in the Florida

First District Court of Appeal ("First DCA"), which was granted.  *Morris v. State*,

132 So. 3d 1242 (Fla. 1st DCA 2014) (copy at Ex. A).  The mandate issued on March

18, 2014, and, on that date, a copy of the First DCA's opinion was treated as

petitioner's notice of appeal.  (Ex. A).  Petitioner's appointed counsel filed a brief in

accordance with *Anders v. California*, 386 U.S. 738 (1967), and *In re Anders Briefs*,

581 So. 2d 149 (Fla. 1991), asserting that the appeal was without merit.  (Ex. G).

Petitioner filed a *pro se* initial brief.  (Ex. H).  On May 22, 2015, the First DCA

affirmed per curiam without opinion.  *Morris v. State*, No. 1D14-1407, 169 So. 3d

1168 (Fla. 1st DCA 2015) (Table) (copy at Ex. I).  The Florida Supreme Court

dismissed petitioner's petition for writ of certiorari for lack of jurisdiction.  *Morris*

*v. State*, 177 So. 3d 1269 (Fla. Aug. 3, 2015) (Table) (copy at Ex. K).

On November 19, 2014, petitioner filed a *pro se* motion to correct illegal

sentence under Florida Rule of Criminal Procedure 3.800, claiming that his sentence

was illegal under *Villery v. Fla. Parole and Probation*, 396 So. 2d 1107 (Fla. 1981).

(Ex. E, pp. 78-80).  By order rendered February 24, 2015, the state circuit court ruled

that to the extent the motion was filed under Fla. R. Crim. P. 3.800(b), it was deemed

denied 60 days after it was filed by operation of Rule 3.800(b)(1)(B), and to the

extent the motion was filed under Rule 3.800(a), the court lacked jurisdiction to

consider it due to the pendency of petitioner's direct appeal.  (Ex. E, pp. 82-83).

On April 27, 2015, petitioner filed a *pro se* "Motion for Post Conviction Relief

(3.850)" under Florida Rule of Criminal Procedure 3.850.  (Ex. L, pp. 1-102).  On

July 23, 2015, petitioner filed a *pro se* "Motion for Belated Withdrawal of Plea"

under Florida Rules of Criminal Procedure 3.170 and 3.850.  (Ex. L, pp. 103-196

through Ex. M, pp. 197-218).  On August 1, 2015, petitioner filed a *pro se* pleading

titled "Demand for Evidentiary Hearing for Inquiry into Factual Basis for

Defendant's Nolo Plea".  (Ex. M, pp. 219-26).  By order rendered August 19, 2015,

the state circuit court treated petitioner's Rule 3.850 motion as a motion to modify

sentence under Rule 3.800(c), and denied relief.  (Ex. M, pp. 229-66).  In the same written order, the circuit court treated petitioner's motion for belated withdrawal of plea as a motion for postconviction relief under Rule 3.850, and denied relief.  (*Id*.). By separate order rendered August 19, 2015, the circuit court denied petitioner's demand for evidentiary hearing in light of its order denying postconviction relief. (Ex. M, pp. 267-68).  The First DCA affirmed the denial of postconviction relief, per curiam and without opinion.  *Morris v. State*, No. 1D15-4492, 182 So. 3d 643 (Fla. 1st DCA 2016) (Table) (copy at Ex. P).  The mandate issued February 1, 2016. (Ex. P).

On July 28, 2015, petitioner filed another Rule 3.800(a) motion to correct illegal sentence, again claiming that his sentence was illegal under *Villery, supra*. (Ex. Q, pp. 1-4).  The state circuit court denied the motion on the merits on August 19, 2015.  (*Id*., pp. 5-14).  The First DCA per curiam affirmed without opinion on January 14, 2016.  *Morris v. State*, No. 1D15-4491, 182 So. 3d 643 (Fla. 1st DCA 2016) (Table) (copy at Ex. T).  The mandate issued February 1, 2016.  (Ex. T).

On October 7, 2015, petitioner filed a motion to vacate the electronic monitoring requirement from the order of probation.  (Ex. U, Attached Ex. A).  The state circuit court denied the motion on October 28, 2015.  (Ex. U, Attached Ex. B). On November 30, 2015, petitioner filed a *pro se* state habeas petition in the First

DCA, seeking to "reverse" the circuit court's October 28, 2015, order. (Ex. U). The First DCA treated the habeas petition as a petition for writ of certiorari, (Ex. V), and denied relief on April 25, 2016. *Morris v. State*, No. 1D15-5420, 189 So. 3d 764 (Fla. 1st DCA 2016) (Table) (copy at Ex. Z). The mandate issued May 11, 2016. (Ex. Z).

Petitioner was released from the incarceration portion of his sentence on November 15, 2015, and began serving his term of probation. (*See* Doc. 1, p. 11.1).[2] Petitioner filed his federal habeas petition on January 29, 2016, raising five claims. (Doc. 1). Respondent asserts that each claim fails for one or more of the following reasons: (1) the claim is unexhausted and procedurally defaulted; (2) the claim presents a purely state law issue that is not cognizable on federal habeas review; (3) the claim is without merit because the state court's rejection of it was consistent with clearly established federal law and based on a reasonable determination of the facts. (Doc. 31).

## RELEVANT LEGAL STANDARDS

### Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C.

---

[2] References to page numbers of the petition are to the numbers petitioner assigned.

§ 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review.  *See Boerckel*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))).

A claim is also considered procedurally defaulted if it was presented to the state court but rejected on the independent and adequate state ground of procedural bar or default.  *See Maples v. Thomas*, 565 U.S. 266, 280, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained

by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." (alterations in original) (internal quotation marks and citations omitted)); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. *See Lee v. Kemna*, 534 U.S. 362, 375, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the state rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner. *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). "For cause to exist, an external impediment, whether it

be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts are precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's factual determinations are presumed correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, 575 U.S. —, —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there

is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law. *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004). In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning

> their decisions only when there could be no reasonable dispute that they
> were wrong.  Federal habeas review thus exists as "a guard against
> extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal."  *Harrington,
> supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct.

770, 178 L. Ed. 2d 624 (2011)).  The § 2254(d) standard "is difficult to meet . . .

because it was meant to be."  *Richter*, 562 U.S. at 102.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on

the merits in state court where that adjudication "resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding."   28 U.S.C. § 2254(d)(2).   The "unreasonable

determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding.  *See

Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable

application" clause, the federal court applies an objective test.  *See Miller-El v.

Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that

a state court decision based on a factual determination "will not be overturned on

factual grounds unless objectively unreasonable in light of the evidence presented in

the state court proceeding.").  Federal courts "may not characterize . . . state-court

factual determinations as unreasonable merely because we would have reached a

different conclusion in the first instance." *Brumfield v. Cain*, 576 U.S. —, —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## DISCUSSION

Ground One             Trial court violated petitioner's right to due process when it denied his request for copies of pre-trial discovery.

Petitioner's first claim reads: "Petitioner's due process rights were violated when he made an in-court request for 'pre-trial transcripts and discovery exhibits' at his March 28, 2013, plea hearing, (see plea colloquy – Attachment 1). That request was denied basically due to budget cuts in order to obtain a wrongful/unconstitutional conviction." (Doc. 1, p. 5.1). Petitioner asserts he presented this claim to the state courts in his direct appeal and in his "Motion for Belated Withdrawal of Plea". (Doc. 1, p. 5). Respondent asserts this claim is procedurally defaulted. (Doc. 31, pp. 16-23). It is unnecessary to decide the procedural default issue, because petitioner's claim fails on the merits even on *de novo* review.

The standard for determining the validity of a guilty or no contest plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 36-37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "Once a plea of guilty [or no contest] has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." *Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983). This waiver includes all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). The Supreme Court explained in *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.*, 411 U.S. at 267; *see also  Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently

and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").   A jurisdictional defect is one that "implicates a court's power to adjudicate the matter before it."  *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002).

The advantages of entering a plea may only be secured "if dispositions by guilty plea are accorded a great measure of finality."  *Blackledge v. Allison*, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).  Recognizing that a prisoner more often than not "has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea", courts accord great deference to a defendant's statements during a plea colloquy and are reluctant to allow a defendant to go behind his own sworn testimony.  *Id.*, 431 U.S. at 71.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.   Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 73-74 (citations omitted).

The transcript of petitioner's plea hearing establishes that petitioner knew, before entering his plea, that he did not personally inspect copies of the discovery materials but instead reviewed their substance with defense counsel.  The court

allowed petitioner the opportunity to terminate the plea process and not enter the plea if petitioner felt he was not adequately informed. (Ex. B, p. 46). Petitioner responded: "No, ma'am, I'm just ready to get this over with." (*Id*.). Petitioner's present complaint of not receiving copies of discovery materials does not undermine the voluntary and intelligent character of his plea. Petitioner is not entitled to habeas relief on his due process claim.

Ground Two          "Counsel was ineffective for failing to provide defendant with request[ed] discovery materials or to advise defendant of the availability of a viable defense through exculpatory evidence – counsel misrepresented said evidence." (Doc. 1, p. 6).

Petitioner claims counsel was ineffective for failing to provide him copies of deposition transcripts and other discovery materials and for failing to advise him of "a viable defense through exculpatory evidence." (Doc. 1, p. 6). Petitioner does not identify the "viable defense" or the "exculpatory evidence". Petitioner asserts he presented this claim to the state courts in his direct appeal and in his "Motion for Belated Withdrawal of Plea". (Doc. 1, p. 7). Respondent asserts this claim is procedurally defaulted. (Doc. 31, pp. 24-28). Petitioner's reply insists that the claim was raised in his "Motion for Belated Withdrawal of Plea". (Doc. 34, p. 13).

A.    Exhaustion and Procedural Default

Petitioner fairly presented the substance of his ineffective assistance claim to the state court in his "Motion for Belated Withdrawal of Plea" (Ex. L, pp. 113-116),

where he faulted counsel for failing to disclose "contradictory and non-incriminating" deposition testimony which would have supported a "lack-of-substantive-evidence defense". (*Id*.). The state circuit court denied relief on the merits (Ex. M, pp. 231-32), and the First DCA summarily affirmed. (Ex. P).

B.     Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012) (*citing Missouri v. Frye*, 566 U.S. 133, 132 S. Ct. 1399, 1404, 182 L. Ed. 2d 379 (2012), *and McMann v. Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168.

The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to claims that counsel was ineffective during plea negotiations. *Lafler*, 566 U.S. at 162-63 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Frye*, 566 U.S. at 138, 147-51 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S.

52, 48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying *Strickland*'s two-part test

to defendant's challenge to his guilty plea based on ineffective assistance of

counsel). The petitioner must establish that "counsel's representation fell below an

objective standard of reasonableness," and that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694.

C.    Section 2254 Review of State Court's Decision

The state circuit court denied relief as follows:

> With regard to his second claim, Defendant alleges a ground of "newly discovered evidence." He states that his defense counsel relayed her "very vague, guarded and restrained but altered versions of the deposition transcripts" prior to his plea, but asserts that now, having reviewed the transcripts, he has uncovered new evidence in the form of "very different, contradictory, and far less incriminating" information from what was described to him by his defense counsel prior to his plea. Because he was deprived of the opportunity to review these documents, Defendant argues that he was deprived of a "lack of substantive evidence" defense, and insists that he would have gone to trial he had been properly advised.
>
> The Court has reviewed Defendant's attachments, in which he outlines the transcript details which he states were "non-incriminating and full of inconsistent statements." Defendant also argues that the lack of a transcript from witness Kyle Morris demonstrates that "[his attorney] obviously lied to [Defendant] to enhance the inducement of his involuntary nolo plea." However, on the record before the Court, the Court cannot conclude that counsel was ineffective for failing to provide Defendant with personal copies of the discovery/depositions and to advise him that a "lack of substantive evidence" defense was available. More importantly, defendant was well aware at the time of

his plea that he had not personally reviewed the information contained
in the depositions and discovery. "[A defendant] cannot assert that his
plea was not knowingly and voluntarily entered where he concedes he
was well aware of his counsel's deficiencies prior to the entry of his
plea." <u>Davis v. State</u>, 938 So. 2d 555, 557 (Fla. 1st DCA 2006). After
hearing Defendant's concerns regarding his discovery, the Court
afforded Defendant an opportunity to delay his plea, saying, "[U]nless
you tell me that you don't want to enter this plea, I'm going to go ahead
and sentence you." Defendant responded, "No, ma'am, I'm just ready
to get this over with." Defendant is not entitled to relief on the basis of
his second claim.

(Ex. M, pp. 231-32) (footnote omitted). The First DCA summarily affirmed. (Ex.

P).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's

summary affirmance, which is the final state court adjudication on the merits of

petitioner's claim. *See Richter*, 562 U.S. at 99 ("When a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed

that the state court adjudicated the claim on the merits in the absence of any

indication or state-law procedural principles to the contrary."); *Wilson v. Warden,*

*Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant

decision for purposes of § 2254 review as the state appellate court's summary

affirmance of the lower tribunal's decision), *cert. granted*, No. 16-6855, 2017 WL

737820 (U.S. Feb. 27, 2017). Where, as here, "the last adjudication on the merits

provides no reasoned opinion, federal courts review that decision using the test

announced in *Richter*." *Wilson*, 834 F.3d at 1235. The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter,* 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102.

The First DCA reasonably could have concluded that petitioner's claim of ineffectiveness for failing to provide copies of deposition transcripts was waived by petitioner's plea. As discussed above, petitioner was aware, prior to entry of his plea, that counsel did not provide copies of the discovery materials. Petitioner was provided the opportunity to forego entering the plea and proceed to trial. Petitioner knowingly and voluntarily chose to proceed with the plea because he was "ready to get this over with" and believed the plea agreement was in his best interest.

The First DCA also reasonably could have rejected petitioner's ineffectiveness claim arising from his now-proposed defense – that the witnesses' deposition testimony was so contradictory and impeachable the State would be unable to prove its case at trial. This court reviewed the deposition transcripts and

the arrest report that were before the state court.  (*See* Ex. L, pp. 141-96 (deposition transcripts); Ex. B, p. 3 (arrest report)).  Whatever inconsistencies petitioner believes they reveal, fairminded jurists could conclude that petitioner failed to establish counsel acted unreasonably in failing to advise him the State would have difficulty proving its case.  M.T.'s deposition testimony was detailed, internally consistent, and consistent with her prior statement to police in all material respects.  (Ex. L, pp. 141-52).  The remaining State's witnesses lent credibility to M.T.'s testimony.

The First DCA's rejection of petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of, clearly established Federal law.  Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three          "Factual basis for plea void – arrest report insufficient to serve as a factual basis where no incriminating evidence was introduced, but exculpatory evidence was requested and denied, and defendant actually claimed innocence in the arrest report rendering it void."  (Doc. 1, p. 8).

Petitioner claims the trial court should not have accepted his plea because it lacked a factual basis.  (Doc. 1, p. 8).  Petitioner asserts he presented this claim to the state courts in his direct appeal and in his "Motion for Belated Withdrawal of Plea".  (Doc. 1, p. 8).  Respondent concedes that petitioner exhausted his state court remedies by presenting this claim in his motion for belated withdrawal of plea.  (Doc.

31, p. 28).  The state circuit court denied relief on the merits (Ex. M, pp. 232-33),

and the First DCA summarily affirmed.  (Ex. P).

A.      Clearly Established Federal Law

"[T]he due process clause does not impose a constitutional duty on state trial

judges to ascertain a factual basis before accepting a plea of guilty or nolo contendere

that is not accompanied by a claim of innocence."  *Wallace v. Turner*, 695 F. 2d 545,

548 (11th Cir. 1983).  When a guilty or no contest plea <u>is</u> accompanied by a claim

of innocence, the Constitution allows a court to accept the plea provided it has a

factual basis.  *See Alford*, 400 U.S. at 38 ("In view of the strong factual basis for the

plea demonstrated by the State and [the defendant's] clearly expressed desire to enter

it despite his professed belief in his innocence, we hold that the trial judge did not

commit constitutional error in accepting it."); *see also Wallace*, 695 F.2d at 548

("[T]he purpose of placing the facts on the record is not to establish guilt as a basis

for a judgment of conviction.  Rather it is to aid in the constitutionally required

determination that the defendant entered the plea intelligently and voluntarily.  A

factual basis demonstrates a defendant's recognition – despite his denial of guilt –

that the evidence negates his claim of innocence, he has nothing to gain by a trial,

and much to gain by pleading guilty." (*citing Willett v. Georgia*, 608 F.2d 538, 540

(5th Cir. 1979); *Alford*, 400 U.S. at 37-38)).

B.      Section 2254 Review of State Court's Decision

The state circuit court denied relief on this claim as follows:

> Finally, Defendant asserts that the factual basis for his plea is "void" because "the court could not have possibly or reasonably been sure that the facts of the case fit the offenses with which the defendant was charged if the court did not provide those requested discovery materials to Morris upon request or especially take the time itself to review those depositions (and discovery exhibits) to see that together they were inconsistent and contradictory to one another, and weighed together demonstrated that only the alleged victim's testimony was semi-incriminating towards Morris. . .".

> At the time of the plea, Defendant signed a sentence recommendation, in which he agreed that the arrest report would be incorporated by reference to serve as a factual basis for the plea. The Court found a factual basis at the time of the plea. The Court has again reviewed the report, and finds that it is and was sufficient to serve as a factual basis for the plea entered by Defendant. He is not entitled to relief on this basis.

(Ex. M, pp. 232-33) (footnotes omitted). The First DCA summarily affirmed. (Ex. P).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim. *See Richter*, 562 U.S. at 99. Petitioner must establish there was no reasonable basis for the First DCA to deny relief.

Petitioner has not met his burden under § 2254(d). The First DCA reasonably could have concluded that petitioner's plea meets the constitutional standard.

Petitioner did not protest his innocence at his plea hearing, and that is fatal to any constitutional claim.  (Ex. B, pp. 41-50).  The fact that petitioner earlier protested his innocence when questioned by police at the scene does not undermine the voluntariness of his subsequent plea.  *See Wallace*, 695 F.2d at 548.

Even if petitioner had claimed innocence at the plea hearing, he has not shown that his plea was not voluntary and intelligent.  Petitioner executed a plea agreement wherein he agreed that the arrest report would be incorporated by reference as the factual basis for his plea.  (Ex. B, p. 6).  The form stated:

> FACTUAL BASIS:  The arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea[.] . . .

(Ex. B, p. 6).  The facts contained in the arrest report provide strong evidence of petitioner's guilt (Ex. B, p. 3), as does M.T.'s deposition testimony (Ex. L, pp. 141-52).

In addition, petitioner admitted in open court and in the written plea agreement that he reviewed the facts of his case with his attorney prior to plea entry.  (Ex. B, pp. 7, 45).  Petitioner also affirmed, by signing the plea agreement, that "I agree and stipulate there are sufficient facts available to the State to justify my plea of guilty or nolo contendere to the charge(s)."  (Ex. B, p. 7).  At the plea hearing, petitioner clearly expressed his desire to enter the no contest plea after affirming under oath

that he understood the rights he was waiving by entering the plea, including the right to make the State prove its case against him beyond a reasonable doubt, the right to present any defenses he had, the right to cross-examine witnesses who testified against him, and the right to testify or to remain silent. (Ex. B, p. 43-47). In view of the verified factual basis for the plea and petitioner's clearly expressed desire to enter it, the trial judge did not commit constitutional error in accepting it.

The First DCA's rejection of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established Federal law. Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four        "Plea not voluntarily/intelligently entered because it was induced via requested/withheld evidence, and in the plea colloquy the judge acknowledges that she knew defendant did not have a chance to read the requested discovery material or understand it." (Doc. 1, p. 10).

Petitioner's fourth claim merely re-asserts the same issues as Grounds One, Two and Three above, and is denied for the reasons stated above. *See* discussion *supra* Grounds One, Two and Three.

Ground Five        Petitioner's sentence "violated Florida's split sentence alternative pursuant to § 948.03(2), Florida Statutes, and pursuant to Florida Supreme Court precedent. . . ." (Doc. 1, p. 11.1).

Petitioner's final claim is that his sentence violates Florida law, namely,

*Villery v. Fla. Parole and Probation*, 396 So. 2d 1107 (Fla. 1981).  Petitioner's

supporting facts state:

> This ground comes from the single ground raised in petitioner's 'Rule 3.800(a) Motion to Correct Illegal Sentence', which was filed on July 28, 2015, only 5 days after petitioner's 'Rule 3.170(l)/3.850 Motion for Belated Withdrawal of Plea', which were both summarily denied without an evidentiary hearing on August 18, 2015.  This single ground claimed that petitioner's sentence, on a single count, of 4 years state prison followed by 5 years probation, violates Florida's Split Sentence Alternatives pursuant to § 948.03(2), Florida Statutes, and pursuant to Florida Supreme Court precedent, "incarceration pursuant to the split sentence alternatives found in § 948.03(2), which equals or exceeds one year is invalid. . . . Accordingly, one who has been given a split sentence probation contrary to the mandate of this decision is entitled to have the illegal order corrected (and) in modifying a probation order, no additional period of incarceration may be imposed on a probationer who has already served one year or more of incarceration."  Accordingly, since the instant petitioner has already served his sentence of 4 years state prison, and filed this original claim/ground prior to his November 15, 2015 release from state prison, the illegal probationary portion of the sentence must be vacated.
>
> § 948.03(2) was amended sometime in 2014 to allow this type of sentence, however, well after petitioner's alleged 2012 offense or his 2013 conviction, and therefore does not apply instantly.

(Doc. 1, p. 11.1).  Respondent asserts petitioner's sentencing claim is not cognizable

on federal habeas review because it presents a purely state law issue.  (Doc. 31, pp.

35-36).

Federal habeas relief is available to correct only constitutional injury. *See* 28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). "The writ of habeas corpus was not enacted to enforce State-created rights." *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000) (citation and quotation marks omitted); *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding that habeas petitioner's argument that the trial judge misinterpreted state law regarding his departure from State's recommended

guidelines for sentencing, thus resulting in the denial of due process and equal protection, raised only an issue of state law and thus was not cognizable in a federal habeas action; explaining that "[i]n the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures").

Petitioner's challenge to his sentence presents a purely state law issue – whether his sentence runs afoul of the Florida Supreme Court's decision in *Villery, supra*. The state circuit and appellate courts reviewed petitioner's sentence and found it did not violate state law.

Petitioner attempts to transform his claim into one of constitutional dimension by arguing, for the first time in his reply, that his sentencing claim invokes the Supremacy Clause and "Implied Conflict Pre-Emption". (*See* Doc. 34, pp. 27-29). Petitioner's discussion of the Supremacy Clause does not convert this purely state law question into a constitutional one. Even if it did, petitioner concedes there is no clearly established Federal law on the issue (doc. 34, p. 30), and also concedes that he did not present the federal constitutional nature of his claim to the state courts (*id.*). For all of the foregoing reasons, petitioner is not entitled to federal habeas relief on Ground Five.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (*quoting* 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774, 197 L. Ed. 2d 1 (2017) (*quoting Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 1604, 146 L. Ed. 2d 542 (2000) (emphasis added). The petitioner here cannot make the requisite showing.  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall mail a copy of this Report and Recommendation to petitioner at his address of record and to the following address indicated on the Florida Department of Corrections' website:  Charles Litton Morris, DC #223820, Northwest Florida Reception Center Annex, 4455 Sam Mitchell Drive, Chipley, Florida 32428.

And, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging petitioner's judgment and sentence in *State of Florida v. Charles Litton Morris*, Escambia County Circuit Court Case No. 12-CF-3094, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 25th day of October, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.